UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
(TAMPA DIVISION)

| | |
|---|---|
| HILAIRE GRATTIER, | |
| *Plaintiff,* | |
| *v.* | CASE NO: 8:20-cv-03013 |
| BRITISH AIRWAYS, PLC, | JURY TRIAL DEMANDED |
| *Defendant.* | |

## COMPLAINT – CIVIL ACTION AND DEMAND FOR JURY TRIAL

1. This action arises out of injuries sustained by United States citizen Plaintiff Hilaire Grattier due to an accident onboard Defendant British Airways PLC's flight number 2176 from London, United Kingdom to Tampa, Florida that took place on May 5, 2019 ("Flight 2167").

2. Plaintiff's claims arise under a treaty called the Montreal Convention, to which the United States is a party. [1]

**THE PARTIES**

3. At all times material, Plaintiff Hilaire Grattier was and is a resident of Florida and of Manatee County.

4. Defendant, British Airways PLC ("British Airways"), is an air carrier that operates international passenger common carrier services by air for revenue and profit.

---

[1] The Convention for the Unification of Certain Rules for International Carriage by Air, done at Montreal on May 28, 1999, Treaty Doc. No. 106–45, reprinted at 1999 WL 33292734, the "Montreal Convention."

5. Defendant British Airways operates its aircraft in the United States pursuant to a foreign air carrier certificate issued by the United States Department of Transportation, Certificate Number BRAF010F.

6. Defendant British Airways' airline address on file with the United States Federal Aviation Administration is: Speedbird House, P.O. Box 10, Hounslow, TW6 2JA, UK.

7. At all times material Defendant British Airways conducted business in Florida, maintained a registered agent in Florida and was authorized to transact business in Florida by the Florida Department of State via assigned document number 835192.

**JURISDICTION AND VENUE**

8. This Honorable Court also has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1331 because this action is "arising under" a treaty of the United States, the Montreal Convention.

9. Venue is proper in this Honorable Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise the claim occurred here.

10. Venue is proper in this Honorable Court pursuant to 28 U.S.C. § 1391(c)(2) because Defendant has the capacity to sue and be sued here.

11. Venue is proper in this Honorable Court pursuant to 28 U.S.C. § 1391(c)(2) because Defendant is subject to personal jurisdiction here.

**FACTUAL ALLEGATIONS**

12. At all times material British Airways was and is a common carrier engaged in international passenger air transportation for hire.

13. British Airways Flight 2167 was engaged in international common carrier passenger air transportation.

14. The term "accident" as used in this Complaint takes on the meaning of the term as used in the Montreal Convention.

15. At all times material British Airways employed flight crews and cabin crews who were responsible for the safe and secure operation of its flights and the safety and well-being of passengers while they were onboard its aircraft.

16. At all times material, British Airways was responsible for the training, management, supervision and/or control of its flight and cabin crews, including but not limited to the crew's adherence to standard safety policies and protocols.

17. At all times material, British Airways was responsible for ensuring that its flight crews flew safe routes of flight and adhered to safe practices in accordance with generally accepted and published common aeronautical knowledge.

18. Plaintiff Hilaire Grattier was a passenger onboard British Airways Flight 2167 when he sustained serious injuries solely due to an unexpected and/or unusual event that was an accident.

19. The accident onboard Flight 2167 that caused Mr. Grattier's injuries was British Airways' crew's improper decision to fly through a line of thunderstorms despite the immense danger to air navigation and safety that thunderstorms pose.

20. The accident onboard Flight 2167 that caused Mr. Grattier's injuries was British Airways' crew's improper decision to fly through an area where severe turbulence was present, was forecast, and where they knew or should have known it was likely to exist.

21. The accident onboard Flight 2167 that caused Mr. Grattier's injuries was British Airways' crew's disregard of their training to fly through an area where severe turbulence was present, was forecast, and where they knew or should have known it was likely to exist.

22. The accident onboard Flight 2167 that caused Mr. Grattier's injuries was British Airways' crew's disregard of weather forecasts, weather reports, and their disregard of common aeronautical knowledge about the likelihood of turbulence in and around thunderstorms.

23. The accident onboard Flight 2167 that caused Mr. Grattier's injuries was British Airways' crew's flight through an area with known, forecast, and likely severe turbulence.

24. The accident onboard Flight 2167 that caused Mr. Grattier's injuries was British Airways' crew's failure to provide required warnings to the passengers that turbulence was likely even though they knew or should have known that turbulence was forecast, reported, and very likely for their flight in and around a line of thunderstorms.

25. The accident onboard Flight 2167 that caused Mr. Grattier's injuries was British Airways' crew's failure to illuminate the fasten seatbelt sign or otherwise require passengers to buckle their seatbelts when they knew or should have known that turbulence was forecast, reported, and very likely for their flight in and around a line of thunderstorms.

26. As a direct and/or proximate result of the accident onboard British Airways Flight 2167, Mr. Grattier was violently thrown against the seat in front of him and severely injured both of his knees rendering him unable to properly walk, exercise, or work at his full-time job.

27. Before Flight 2167, Mr. Grattier had no prior knee injuries, complaints, conditions or medical treatment.

28. Before Flight 2167, Mr. Grattier could properly walk, exercise and work at his full-time job.

29. As a direct and/or proximate result of the accident onboard British Airways Flight 2167, Mr. Grattier required surgery on both of his knees and months of physical therapy.

30. As a direct and/or proximate result of the accident onboard British Airways Flight 2167, Mr. Grattier received months of medical treatment including surgery.

31. As a direct and/or proximate result of the accident onboard British Airways Flight 2167, Mr. Grattier was unable to work at his full-time job.

32. As a direct and/or proximate result of the accident onboard British Airways Flight 2167, Mr. Grattier has endured physical pain and suffering, past medical bills, loss of work and earnings.

33. As a direct and/or proximate result of the accident onboard British Airways Flight 2167 in the future Mr. Grattier will endure future physical pain and suffering, future medical bills, and future loss of work and earnings.

**FACTS ABOUT MONTREAL CONVENTION STRICT LIABILITY**

34. A Special Drawing Right (an "SDR") is a unit of international currency, created by the International Monetary Fund.

35. The value of one SDR with respect to the United States Dollar fluctuates with time.

36. The value of one SDR on December 1, 2020 was one dollar and forty-two point nine zero zero zero cents ($1.429000).

37. Plaintiff is unable to ascertain the value of one SDR at the future time when judgment may be entered in his favor in this matter.

38. The Montreal Convention, as originally ratified and adopted by the United States, contained a strict liability limit of 100,000 SDR.

39. Pursuant to Montreal Convention Article 21, paragraph 1, when a passenger in international air carriage is injured due to an accident, the air carrier is strictly liable for damages with no available defenses up to a limit of 100,000 SDR (the "strict liability limit")

40. The Montreal Convention strict liability limit has been modified and is currently 128,821 SDR.

41. The modification to a strict liability limit of 128,821 SDR has been duly adopted by the United States.  85 Fed. Register 3104 (Jan. 17, 2020).

42. Should the Montreal Convention strict liability limit increase in the future before judgment is entered, Plaintiff will seek judgment for strict liability set at the amount of the future treaty strict liability limit.

43. Under the Montreal Convention, a plaintiff's provable damages for injuries from an accident in international air carriage above the strict liability limit are not capped and they are not otherwise limited in quantity, but they are subject to defenses which, if asserted, it is the carrier's burden to prove.

44. Under the Montreal Convention, Mr. Grattier's damages exceed the strict liability limit and British Airways cannot meet its burden to prove that the defenses available to it apply to Plaintiff's claims.

**COUNT ONE**
**MONTREAL CONVENTION STRICT CARRIER LIABILITY**
**FOR DAMAGES UP TO 128,821 SPECIAL DRAWING RIGHTS**
*(PLAINTIFF V. BRITISH AIRWAYS)*

45. Plaintiff Hilaire Grattier incorporates the preceding paragraphs of this Complaint as though they were set forth at length herein.

46. Under Article 21, paragraph 1, of the Montreal Convention, British Airways agreed to be held strictly liable up to a limit of 128,821 SDR (approximately $184,085 on December 1, 2020) for any and all passenger injuries sustained on its aircraft involved in international carriage that were caused by an "accident" within the meaning of the Montreal Convention.

47. The damages alleged by Mr. Grattier exceed 128,821 SDR and were caused by an accident that resulted in injury to Mr. Grattier during the course of his international air transportation onboard British Airways Flight 2167.

48. British Airways is therefore strictly liable to Mr. Grattier in an amount up to 128,821 SDR.

WHEREFORE, Plaintiff Hilaire Grattier demands judgment against British Airways for damages in a sum equal to 128,821 SDR, exclusive of interest, costs, and attorney's fees, plus any other relief which the Court deems just and proper.

**COUNT TWO**
**MONTREAL CONVENTION STRICT CARRIER LIABILITY**
**FOR DAMAGES ABOVE 128,821 SPECIAL DRAWING RIGHTS**
*(PLAINTIFF V. BRITISH AIRWAYS)*

49. Plaintiff Hilaire Grattier incorporates the preceding paragraphs of this Complaint as though they were set forth at length herein.

50.     Under Article 21, paragraph 2, of the Montreal Convention, British Airways is liable for damages in excess of 128,821 SDR for passenger injuries sustained on its aircraft engaged in international carriage that were caused by an "accident" unless it can prove that the injuries were not due to British Airways' negligence, wrongful act or omission.

51.     British Airways **cannot** meet its burden to prove that its negligence, wrongful act or omission did not cause or contribute to the accident and resulting injuries to Mr. Grattier.

52.     British Airways **cannot** meet its burden to prove that the injuries suffered by Mr. Grattier were caused solely by the acts of third parties.

53.     Mr. Grattier has sustained damages in excess of 128,821 SDR for which British Airways is liable in an amount to be determined at the trial of this action.

WHEREFORE, Plaintiff Hilaire Grattier demands judgment against British Airways for damages in excess of 128,821 SDR, exclusive of interest, costs and attorney's fees and such other relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Pursuant to the Seventh Amendment of the United States Constitution and Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all counts.

Dated: December 18, 2020                           Respectfully submitted,

By:  /s/ *John J. Gagliano*
John J. Gagliano, Esq. – **Trial Counsel**
Florida Bar No. 87379
GAGLIANO LAW OFFICES
230 South Broad Street
17th Floor
Philadelphia, PA 19102
(215) 554-6170
*john@gagliano.law*