UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**HILAIRE GRATTIER,**

    **Plaintiff,**

v.                                                 **Case No. 8:20-cv-3013-CEH-AAS**

**BRITISH AIRWAYS, PLC,**

    **Defendant.**

_____/

**ORDER**

Plaintiff Hilaire Grattier requests that the court compel British Airways, PLC (British Airways) to provide documents responsive to Mr. Grattier's request for production nos. 34-47. (Doc. 26). British Airways opposes the motion.[1] (Doc. 32).

**I.   BACKGROUND**

Mr. Grattier sues British Airways and alleges he sustained serious injuries because of severe turbulence on British Airways Flight 2167 from London, United Kingdom to Tampa, Florida, on May 5, 2019. (Doc. 11).[2] Mr.

---

[1] The court granted Mr. Grattier's request for leave to file a reply, but he failed to do so in the time provided. (*See* Docs. 33,34).

[2] The transportation at issue is an "international carriage" and the rights and liabilities of the parties are governed by the provisions of the Montreal Convention. *See El Al Israel Airlines, Ltd. v. Tseng*, 119 S. Ct. 662, 669 (1999).

Grattier alleges the "fasten seatbelt" sign was not illuminated during the turbulence. (*Id.*).

Mr. Grattier served requests for production of documents on British Airways, who provided objections and responses. (Doc. 26, Ex. C). Mr. Grattier now moves the court to overrule British Airways' objections to request for production nos. 34–47 and to compel production. (Doc. 26). British Airways opposes the motion. (Doc. 32).

These two categories of documents are at issue: (1) request for production nos. 34 through 37, which request documents exchanged between British Airways and several government authorities about Flight 2167; and (2) request for production nos. 38 through 47, which request the names, personal contact information, and citizenship status of all passengers seated in Mr. Grattier's row and the surrounding rows on Flight 2167. (*See* Docs. 26, 32).

## II. ANALYSIS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

A party may move for an order compelling discovery from the opposing party. Fed. R. Civ. P. 37(a). The party moving to compel discovery has the initial burden of proving the requested discovery is relevant and proportional. *Douglas v. Kohl's Dept. Stores, Inc.*, No. 6:15-CV-1185-Orl-22TBS, 2016 WL 1637277, at *2 (M.D. Fla. Apr. 25, 2016) (quotation and citation omitted). The responding party must then specifically show how the requested discovery is unreasonable or unduly burdensome. *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559-60 (11th Cir. 1985).

### A.     Request for Production Nos. 34–37

Mr. Grattier's request for production nos. 34 to 37 request documents and information that British Airways exchanged with various governmental authorities in the United States, the United Kingdom, and the European Union about Flight 2167. (*See* Doc. 26, Ex. C, pp. 10-11).

British Airways, a company organized under the laws of the United Kingdom, is legally barred from providing these communications under U.K. Law and Regulation (EU) No. 376/2014. Specifically, Article 15 of Regulation of the Civil Aviation (EU) states: "Member States, the Agency and organisations shall not make available or use the information on occurrences: (a) in order to attribute blame or liability; or (b) for any purpose other than the maintenance or improvement of aviation safety." Regulation (EU) 376/2014, art. 15.

A balancing test is used to determine whether to order discovery of materials protected from disclosure by the laws of a foreign country. *See Société Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for the Southern Dist. of Iowa*, 482 U.S. 522, 565 (1987) (engaging in a comity analysis and declaring that blocking statutes do not deprive an American court of the power to order a party to produce evidence, even though the production may violate the statute). According to British Airways, it already produced documents from its safety reporting system about the investigation of the turbulence encounter, including its Formal Report (FR-059 British Airways' Corporate Safety incident investigation report), Air Safety Report (ASR-2802) sent to the U.K. Civil Aviation Authority, excerpts from British Airways General Procedures manuals, data obtained from the aircraft's Flight Data Recorder, flight planning documents, and relevant pages from the aircraft logbook and Boeing maintenance manuals. (Doc. 32, p. 17).

The negative impact of British Airways compromising confidentiality in aviation safety reporting if compelled to disclose these additional communications is not outweighed by the potential benefit to Mr. Grattier. Because Gratttier is already in possession of information sufficient to evaluate British Airways' procedures, compliance, and actions, these requests for additional documentation are not proportional to the needs of this case.

B.    **Request for Production Nos. 38–47**

Mr. Grattier's request for production nos. 38 through 47 request the names, personal contact information, and citizenship status of passengers seated in Mr. Grattier's row and the surrounding rows on Flight 2167. (*See* Doc. 26, Ex. C, pp. 11-13).

Passenger manifest information is governed by Part 243 of Title 14 of the Code of Federal Regulations. Title 14 C.F.R. § 243.9 provides:

> (c) The contact information [for passengers on any flight] shall be kept confidential and released only to the U.S. Department of State, the National Transportation Safety Board ..., and the U.S. Department of Transportation pursuant to oversight of this part. This paragraph does not preempt other governments or governmental agencies that have an independent legal right to obtain this information.
>
> (d) The contact information . . . shall only be used by covered airlines for notification of family members or listed contacts following an aviation disaster. The information shall not be used for commercial or marketing purposes.

Despite these federal regulations, courts have held that a passenger manifest may be discoverable under a confidentiality agreement. *See, e.g.*, *Jakobot v. Am. Airlines, Inc.*, No. 10-CV-61576, 2011 WL 13214326, at *2 (S.D. Fla. May 23, 2011) (granting motion to compel production of passenger manifest).

Mr. Grattier, however, requires the personal information for over fifty passengers in an effort to obtain eyewitness testimony about the severe turbulence and to identify potential witnesses. British Airways does not

dispute that Flight 2167 encountered severe turbulence that constituted an "accident" under Article 17 of the Montreal Convention. British Airways also does not dispute that severe turbulence occurred and the fasten seatbelt sign was not illuminated prior to the turbulence.[3] Thus, the personal contact information of surrounding passengers is unnecessary to verify this information.

In addition, European privacy laws such as the European General Data Protection Directive 95/46/EC, bar British Airways from disclosing "any processing of personal data" or by "a controller processor or in the [EU] … regardless of whether the processing itself takes place within the [EU]." (*See* Doc. 32, Ex. A). "Personal data" is defined as "any information relating to an identified or identifiable natural person ('data subject')." (*See* Doc. 32, Ex. B).

Disclosure of confidential passenger information for nearly fifty passengers is not relevant or proportional to the needs of the case. Mr. Grattier's need for this broad number of passengers' personal information does not outweigh British Airways' duty to protect the passengers' privacy interests under federal and European privacy laws.

---

[3] The Captain of Flight 2167, Captain Tom Gale, testified he did not illuminate the fasten seatbelt sign before the turbulence. (Doc. 26, Ex. B, p. 177).

## III. CONCLUSION

It is **ORDERED** that Mr. Grattier's motion to compel (Doc. 26) is **DENIED**.

**ENTERED** in Tampa, Florida on August 4, 2021.

AMANDA ARNOLD SANSONE
United States Magistrate Judge